UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

KIMBERLY J. CLARK,

                                    Plaintiff,

                                                                5:17-CV-0568
v.                                                              (GTS)

NANCY BERRYHILL
*Acting Commissioner of Social Security*,

                                    Defendant.
_____

APPEARANCES:                                OF COUNSEL:

LAW OFFICES OF STEVEN R. DOLSON            STEVEN R. DOLSON, ESQ.
   Counsel for Plaintiff
126 North Salina Street, Suite 3B
Syracuse, New York 13202

SOCIAL SECURITY ADMINISTRATION            JUNE L. BYUN, ESQ.
OFFICE OF GENERAL COUNSEL–REGION II       Special Assistant U.S. Attorney
   Counsel for Defendant
26 Federal Plaza, Room 3904
New York, New York 10278

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently before the Court, in this action filed by Kimberly J. Clark ("Plaintiff") against

the Commissioner of Social Security ("Defendant") pursuant to 42 U.S.C. §§ 405(g) and

1383(c)(3), are Plaintiff's motion for judgment on the pleadings and Defendant's motion for

judgment on the pleadings.  (Dkt. Nos. 9, 12.)  For the reasons set forth below, Plaintiff's motion

for judgment on the pleadings is denied, and Defendant's motion for judgment on the pleadings

is granted.  The Commissioner's decision denying Plaintiff's disability benefits is affirmed, and

Plaintiff's Complaint is dismissed.

I.     **RELEVANT BACKGROUND**

A.     **Factual Background**

Plaintiff was born in 1975, making her 37 years old at the alleged onset date, 38 years old at the application filing date, and 40 years old at the date of the ALJ's decision.  Plaintiff reported obtaining a GED.  The vocational expert found that Plaintiff had past work as a disability aide, home health aide, and pharmacy technician.  In her application, Plaintiff alleged disability due to hypertension, bipolar disorder, depressive disorder, anxiety disorder, Crohn's disease, migraines, asthma, and a right arm deformity.

B.     **Procedural History**

Plaintiff applied for Disability Insurance Benefits and  Supplemental Security Income on January 28, 2014, alleging disability beginning October 10, 2012.  Plaintiff's applications were initially denied on June 4, 2014, after which she timely requested a hearing before an Administrative Law Judge ("ALJ").  Plaintiff appeared at a video hearing before ALJ Julia D. Gibbs on October 29, 2015.  On December 17, 2015, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act.  (T. 21-26.)[1]  On April 27, 2017, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  (T. 1-3.)

---

[1]     The Administrative Transcript is found at Dkt. No. 8.  Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

C.    **The ALJ's Decision**

Generally, in her decision, the ALJ made the following seven findings of fact and conclusions of law.  (T. 21-26.)  First, the ALJ found that Plaintiff was insured for benefits under Title II until March 31, 2015.  (T. 21.)  Second, the ALJ found that Plaintiff has not engaged in substantial gainful activity since her application filing date.  (*Id.*)  Third, the ALJ found that Plaintiff's right elbow injury status post surgery, degenerative disc disease, sinusitis, and migraines (controlled with medication) are severe impairments; however, the ALJ found that her bipolar disorder is not a severe impairment.  (T. 21-22.)  Fourth, the ALJ found that Plaintiff's severe impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings").  (T. 22.)   Fifth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform

> light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she is limited to unskilled work and cannot rotate her right arm more than 90 degrees.  She has no limitation on fingering.  There can be no excessive exposure to environmental irritants and no rapid rotation of the neck.[2]

(T. 22.)  Sixth, the ALJ found that Plaintiff is unable to perform her past work.  (T. 25.)  Seventh, and finally, the ALJ found that Plaintiff remains able to perform a significant number of other jobs in the national economy including as a usher, ticket taker, counter clerk, and cafeteria cashier.  (T. 26.)  The ALJ therefore concluded that Plaintiff is not disabled.

---

[2]    The ALJ later defined "unskilled work" as "work that needs little or no judgment to do simple duties that can be learned on the job in a short period."  (T. 24.)

### D.    The Parties' Briefings on the Their Cross-Motions

#### 1.    Plaintiff's Motion for Judgment on the Pleadings

Generally, Plaintiff makes two arguments in support of her motion for judgment on the pleadings.  (Dkt. No. 9, at 5-11 [Pl.'s Mem. of Law].)  First, Plaintiff argues that the ALJ's decision is not supported by substantial evidence because she failed to consider all of the medical source statements when formulating the RFC.  (*Id.* at 5-8.)  More specifically, Plaintiff argues that the ALJ erred in failing to discuss or weigh the opinion from State Agency medical consultant K. Liber-Diaz, Ph.D., which Plaintiff argues is not harmless error because Dr. Liber-Diaz's opinion indicates limitations in accepting instructions, responding to criticism, setting goals, making plans, and handling stress that are not accounted for in the RFC limitation for unskilled work.  (*Id.* at 6-8.)  Plaintiff additionally argues that the ALJ erred in failing to assign weight to the opinions from consultative examiners Elke Lorensen, M.D., and Dennis Noia, Ph.D., who opined limitations inconsistent with the RFC.  (*Id.* at 8-10.)

Second, Plaintiff argues that the ALJ failed to consider the relevant factors required by the regulations when declining to rely on the opinions of treating sources Katrin Scheurer, L.M.S.W., and Julie Yankowsky, N.P.  (*Id.* at 10-11.)

#### 2.    Defendant's Motion for Judgment on the Pleadings

Generally, Defendant makes three arguments in support of her motion for judgment on the pleadings, all arguing that the ALJ properly evaluated the medical opinion evidence when determining the RFC.  (Dkt. No. 12, at 7-15 [Def.'s Mem. of Law].)  First, Defendant argues that the ALJ's failure to discuss Dr. Lieber-Diaz's opinion does not necessitate remand because the findings cited by Plaintiff from that opinion were in a section of the opinion form that was

"merely a worksheet" for aiding in the determination of an individual's functional limitations, while Dr. Lieber's actual opinion was that Plaintiff remained capable of performing simple, unskilled work; Defendant argues that, because the ALJ limited Plaintiff to unskilled work, any error in failing to weigh this opinion is harmless. (*Id.* at 8-10.)

Second, Defendant argues that the ALJ appropriately considered the opinions from Dr. Lorensen and Dr. Noia and summarized those opinions in a way that makes clear the extent to which she relied on those opinions, and notes that the regulations do not require the ALJ to provide good reasons for declining to rely on the opinion of one-time examining physicians. (*Id.* at 10-12.) Defendant also argues that there is no reversible error because the opinions from Dr. Lorensen and Dr. Noia are not more restrictive than the RFC, and Plaintiff has not shown that the ALJ failed to adequately account for any limitations expressed in those opinions. (*Id.* at 12.)

Third, Defendant argues that the ALJ did not err when weighing the opinions from Ms. Scheurer and Ms. Yankowsky, noting that the ALJ found these opinions deserving of less weight because the opined limitations were inconsistent with the medical record. (*Id.* at 12-14.)

## II. APPLICABLE LEGAL STANDARDS

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence

standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).  "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

B.      **Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an

individual is disabled as defined by the Social Security Act.  20 C.F.R. §§ 404.1520, 416.920.

The Supreme Court has recognized the validity of this sequential evaluation process.  *Bowen v.*

*Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently
> engaged in substantial gainful activity.  If he is not, the
> [Commissioner] next considers whether the claimant has a "severe
> impairment" which significantly limits his physical or mental ability
> to do basic work activities.  If the claimant suffers such an
> impairment, the third inquiry is whether, based solely on medical
> evidence, the claimant has an impairment which is listed in Appendix
> 1 of the regulations.  If the claimant has such an impairment, the
> [Commissioner] will consider him disabled without considering
> vocational factors such as age, education, and work experience; the
> [Commissioner] presumes that a claimant who is afflicted with a
> "listed" impairment is unable to perform substantial gainful activity.
> Assuming the claimant does not have a listed impairment, the fourth
> inquiry is whether, despite the claimant's severe impairment, he has
> the residual functional capacity to perform his past work.  Finally, if
> the claimant is unable to perform his past work, the [Commissioner]
> then determines whether there is other work which the claimant could
> perform.  Under the cases previously discussed, the claimant bears
> the burden of the proof as to the first four steps, while the
> [Commissioner] must prove the final one.

\\*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin*, 758 F.3d 146,

150 (2d Cir. 2014).  "If at any step a finding of disability or non-disability can be made, the SSA

will not review the claim further."  *Barnhart v. Thompson*, 540 U.S. 20, 24 (2003).

III.    **ANALYSIS**

After carefully considering whether the ALJ committed harmful error when considering

and weighing the opinion evidence of record, the Court answers this question in the negative for

the reasons stated in Defendant's memorandum of law.  (Dkt. No. 12, at 6-15 [Def.'s Mem. of

Law].)  To those reasons, the Court adds the following analysis.

-7-

The Second Circuit has long recognized the 'treating physician rule' set out in 20 C.F.R. § 404.1527(c). "'[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'" *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting Burgess v. Astrue, 537 F.3d 117, 128 [2d Cir. 2008]). However, there are situations where the treating physician's opinion is not entitled to controlling weight, in which case the ALJ must "explicitly consider, inter alia: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Greek*, 802 F.3d at 375 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 [2d Cir. 2013]). However, "[w]here an ALJ's reasoning and adherence to the Regulations is clear, she is not required to explicitly go through each and every factor of the Regulation." *Blinkovitch v. Comm'r of Soc. Sec.*, No. 3:15-CV-1196, 2017 WL 782979, at *4 (N.D.N.Y. Jan. 23, 2017) (Carter, M.J.) Report and Recommendation adopted by 2017 WL 782901 (N.D.N.Y. Feb. 28, 2017) (Suddaby, C.J.) (citing *Atwater v. Astrue*, 512 F. App'x 67, 70 [2d Cir. 2013]). After considering these factors, "the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.'" *Greek*, 802 F.3d at 375 (quoting Burgess, 537 F.3d at 129). "The failure to provide 'good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand.'" *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129-30).

The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant replacing the consideration of the treatment relationship between the source and the claimant. *See* 20 C.F.R. § 404.1527(c)(1)-(6). Additionally, when weighing opinions from sources who are not considered "medically acceptable sources"[3] under the regulations, the ALJ must consider the same factors as used for evaluating opinions from medically acceptable sources. *Saxon v. Astrue*, 781 F. Supp. 2d 92, 104 (N.D.N.Y. 2011) (Mordue, C.J.) (citing *Canales v. Comm'r of Soc. Sec.*, 698 F. Supp. 2d 335, 344 [E.D.N.Y. 2010]); SSR 06-03p, 2006 WL 2329939.

Because the majority of the opinion evidence in the record is regarding Plaintiff's mental functioning, the Court will address those opinions first. As discussed above in Part I.C of this Decision and Order, despite finding Plaintiff's bipolar disorder to be a non-severe impairment, the ALJ limited Plaintiff to unskilled work based on her consideration of the evidence and Plaintiff's testimony. (T. 22, 24.)

On April 29, 2014, consultative examiner Dr. Noia observed that, in terms of abnormalities, Plaintiff was somewhat tense and fearful and had a constricted affect that was somewhat reduced in intensity compared with her thoughts and speech, an anxious mood, and mildly impaired recent and remote memory. (T. 384.) Dr. Noia opined that Plaintiff had no limitations other than a moderate-to-marked limitation in her ability to deal with stress. (T. 385.) The ALJ discussed this opinion, stating that "Dr. Noia opined that the claimant appeared to have

---

[3]        Medically acceptable sources are noted to include the following: licensed physicians; licensed or certified psychologists; licensed optometrists; licensed podiatrists; and qualified speech-language pathologists. SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006).

no limitations in understanding and following simple instructions and directions.  She appeared to have no limits in performing complex tasks or maintaining concentration for tasks."  (T. 24.)  The ALJ did not mention that Dr. Noia had opined a moderate-to-marked limitation in Plaintiff's ability to deal with stress and did not indicate the specific weight she afforded to Dr. Noia's opinion.  (*Id.*)

Although the ALJ did not explicitly discuss Dr. Noia's opinion regarding a moderate-to-marked limitation in Plaintiff's ability to deal with stress, the decision indicates that the ALJ specifically considered Plaintiff's ability to handle stress when formulating the RFC.  Notably, the ALJ stated that, based on Plaintiff's testimony that "she has difficulty with stressful situations," a limitation to unskilled work was appropriate.  (T. 24.)  Therefore, the explicit wording of the decision indicates that the ALJ considered Plaintiff's ability to deal with stress when formulating the RFC.  The fact that the ALJ did not adopt the level or types of limitations that Plaintiff believes to be warranted does not constitute a legal error.  Notably, although Dr. Noia opined a moderate-to-marked limitation in Plaintiff's ability to deal with stress, he did not provide guidance as to what specific work-related functions would be impacted as a result of this limitation.  Nor does the Court see any evidence in the record suggesting specific limitations related to Plaintiff's ability to cope with stress beyond a limitation to unskilled work that would raise a question as to whether the ALJ's finding is supported by substantial evidence.  Because the ALJ explicitly considered the effect of Plaintiff's ability to deal with stress when assessing the RFC and there is no indication that more explicit consideration of Dr. Noia's opinion would have altered the ALJ's findings, the ALJ's failure to discuss or weigh this opinion is harmless

error.[4]  *See Larock v. Comm'r of Soc. Sec.*, 15-CV-0323, 2016 WL 1697621, at *8 (N.D.N.Y.

Apr. 5, 2016) (Carter, M.J.) Report and Recommendation adopted by 2016 WL 1700408

(N.D.N.Y. Apr. 27, 2016) (Suddaby, C.J.) (finding that the ALJ's mental health RFC was

supported by substantial evidence because "Plaintiff's difficulties dealing with stress were

provided for by limiting Plaintiff to unskilled work" given that the evidence did not support

greater specific stress-related limitations); *Woodmancy v. Colvin*, 12-CV-0991, 2013 WL

5567553, at * (N.D.N.Y. Oct. 9, 2013) (Sharpe, C.J.) (rejecting the plaintiff's argument that the

ALJ failed to make an accommodation for an impaired ability to cope with work stress because

the ALJ relied on an opinion that opined the plaintiff remained able to perform basic work tasks

despite her difficulty handling stressors); *Rockwell v. Colvin*, 12-CV-0792, 2013 WL 3974168,

at *6 (N.D.N.Y. Aug. 1, 2013) (Bianchini, M.J., Hurd, J.) (finding no error where the ALJ failed

to specifically address Dr. Noia's reference to Plaintiff's difficulties with stress because his

opinion and the opinion of the State Agency medical consultant supported the conclusion that the

plaintiff could perform the basic mental demands of unskilled work, "not withstanding some

difficulty managing stress"); *cf Hendrickson v. Astrue*, 11-CV-0927, 2013 WL 1180864, at *4

(N.D.N.Y. Mar. 20, 2013) (Kahn, J.) (adopting recommendation to remand where the ALJ

accounted for limitations in the ability to handle stress with a single limitation for unskilled work

because "the ALJ has provided no discussion of Plaintiff's ability to cope with stress or of the

reason why unskilled work might be appropriate").

---

[4]     Plaintiff's argument that the ALJ was required to include greater limitations beyond a limitation to  unskilled work based on Dr. Noia's opinion of a moderate-to-marked limitation in the ability to deal with stress is also undermined by the opinion from Dr. Lieber-Diaz.  Notably, Dr. Lieber-Diaz relied in large part on Dr. Noia's examination and opinion when concluding that Plaintiff was limited only to simple, unskilled work.  (T. 87.)  Dr. Lieber-Diaz's opinion supports both the RFC finding and the Court's finding that more careful and explicit consideration of Dr. Noia's opinion by the ALJ would not have altered the ALJ's findings.

On June 2, 2014, State Agency medical consultant Dr. Lieber-Diaz opined that Plaintiff had moderate limitations in her abilities to understand, remember, and carry out detailed instructions, accept instructions and respond appropriately to criticism from supervisors, and set realistic goals or make plans independently of others, but that, overall, she was capable of performing simple, unskilled work.  (T. 85-87.)  The ALJ did not discuss this opinion or indicate the weight she afforded to it.  (T. 22-25.)

However, contrary to Plaintiff's argument, the ALJ's failure to discuss or weigh Dr. Lieber-Diaz's opinion is not error meriting remand.  Specifically, although Dr. Lieber-Diaz noted various moderate limitations in certain sub-areas during his consideration of the effect of Plaintiff's mental impairments, he overall concluded that, even with those moderate limitations, Plaintiff was limited only to simple, unskilled work; Dr. Lieber-Diaz did not opine further limitations related to stress.  (T. 85-87.)  Plaintiff's argument that Dr. Lieber-Diaz's opinion contains functional limitations not encompassed by the RFC limitation to unskilled work is therefore not persuasive.  Because the ALJ found that Plaintiff is limited to unskilled work and there is therefore no indication that explicit consideration of Dr. Lieber-Diaz's opinion would have altered the ALJ's findings, the ALJ's failure to discuss or weigh this opinion is harmless error.  *See Blabac v. Comm'r of Soc. Sec.*, No. 08-CV-0849, 2009 WL 5167650, at *9 (N.D.N.Y. Dec. 18, 2009) (Bianchini, M.J., Sharpe, J.) (collecting cases which indicate harmless error where the opinions that the ALJ failed to weigh either did not conflict with the ALJ's findings or written consideration of the opinions would not have changed the outcome of the ALJ's decision); *see also Ryan v. Astrue*, 650 F. Supp. 2d 207, 217 (N.D.N.Y. 2009) (Bianchini, M.J., Kahn, J.) (finding harmless error where the ALJ improperly discounted the treating physician's

opinion, but still included the opined limitations from that opinion in the RFC, so remand would serve no purpose).

On October 1, 2015, Ms. Scheurer opined, among other things, that Plaintiff had no useful ability to function[5] in maintaining attention for two hour segments, making simple work-related decisions, completing a normal workday or workweek without interruptions from psychologically based symptoms, accepting instructions and responding appropriately to criticism from supervisors, getting along with co-workers or peers, responding appropriately to changes in a routine work setting, dealing with normal work stress or the stress of skilled or semi-skilled work, interacting appropriately with the general public, and using public transportation.  (T. 483-84.)  Ms. Scheurer also opined that Plaintiff was unable to meet competitive standards[6] in her abilities to understand, remember, and carry out either detailed or short and simple instructions, work in coordination with or in proximity to others without being distracted, perform at a consistent pace without an unreasonable number or length of rest periods, set realistic goals or make plans independently of others, and travel in an unfamiliar place.  (*Id.*) On October 7, 2015, Ms. Yankowsky opined the same functional mental limitations as in Ms. Scheurer's opinion from a week earlier.  (T. 631-32.)  The ALJ stated that she was "not persuaded" by these opinions because (a) they are inconsistent with the medical record showing "consistent[ly] normal mental status exams," "no side effects from medication other than

_____

[5]    The phrase "no useful ability to function" is defined in the form as "an extreme limitation, means your patient cannot perform this activity in a regular work setting."  (T. 631)

[6]    The phrase "unable to meet competitive standards" is defined in the form as "your patient cannot satisfactorily perform this activity independently, appropriately, effectively, and on a sustained basis in a regular work setting."  (*Id.*)

increased appetite," and a lack of suicidal ideation even when admitted to the hospital for mental health reasons, and (b) Ms. Scheurer and Ms. Yankowsky are not acceptable medical sources whose opinions could be entitled to controlling weight. (T. 24-25.)

Plaintiff argues primarily that the ALJ erred in failing to consider the relevant factors for assessing opinions from sources who are not acceptable medical sources. (Dkt. No. 9, at 10-11 [Pl.'s Mem. of Law].) However, Plaintiff's argument is unpersuasive because the ALJ explicitly stated that she declined to rely on the opinions from Ms. Scheurer and Ms. Yankowsky because they were inconsistent with the medical evidence in the record. (T. 24-25.) The fact that the ALJ did not also discuss the other relevant factors at length in the decision does not constitute error; as Defendant aptly notes, the regulations do not require such rigid and formulaic decision writing. (Dkt. No. 12, at 14 [Def.'s Mem. of Law].) The ALJ's statements make clear that she considered (a) the treatment relationship, (b) these source's credentials, and (c) the consistency of the opinions with the evidence of record, which would include any treatment notes from Ms. Scheurer and Ms. Yankowsky as well as other sources. (T. 24-25.) The decision therefore confirms that the ALJ considered the relevant factors when weighing these opinions, even if she did not discuss them in detail. Additionally, although an ALJ is required to consider the relevant factors, she is not required to provide "good reasons" for declining to rely on an opinion unless it is from a treating physician. *See Greek*, 802 F.3d at 375 ("The failure to provide 'good reasons for not crediting the opinion of a claimant's *treating physician* is a ground for remand.'") (emphasis added). Plaintiff's argument that the ALJ's consideration of these opinions was contrary to the regulations is therefore without merit.

-14-

As to Plaintiff's physical functioning, the sole opinion in the record was from consultative examiner Dr. Lorensen, who observed that Plaintiff was limited to 40 degrees of supination in her right forearm, but noted that she otherwise presented with normal physical abilities.  (T. 388-89.)  Dr. Lorensen opined that Plaintiff had no gross physical limitations.  (T. 390.)  The ALJ noted that Dr. Lorensen opined no gross physical limitations, but did not indicate the amount of weight she afforded to Dr. Lorensen's opinion.  (T. 24.)  The Court finds that Plaintiff has failed to establish any harmful error in the ALJ's treatment of Dr. Lorensen's opinion.  It is clear that the ALJ, by limiting Plaintiff to light work and including other limitations related to her right arm and neck, found that Plaintiff was more limited than as opined by Dr. Lorensen.  (T. 22.)  Any error in failing to specify the weight afforded to Dr. Lorensen's opinion is therefore harmless. *Blabac*, 2009 WL 5167650, at *9; *Ryan*, 650 F. Supp. 2d at 217.

For the above reasons, the ALJ's consideration of the opinion evidence is consistent with the regulations and supported by substantial evidence, or, at most, harmless error that does not warrant remand.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 12) is **GRANTED**; and it is further

**ORDERED** that the Commissioner's decision denying Plaintiff disability benefits is **AFFIRMED**; and it is further

-15-

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **<u>DISMISSED</u>**.

Dated: June 21, 2018
      Syracuse, New York

HON. GLENN T. SUDDABY
United States District Judge